WELBORN *et al. v.* BOARD OF SUP'RS OF JONES COUNTY.

[94 South. 224.  No. 23083.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Bond election held not invalid for error in description in notice.*

In giving the notice calling an election to be held in a consolidated school district to determine whether bonds of the district should

be issued for the purpose of erecting and equipping a school-house and teacher's home, the election commissioners attempted to include in the notice a description of the land embraced in the district, but erroneously described a part of the land as being in range 11 west instead of range 12 west, *held,* that this error in the notice did not render the election invalid, where the notice contained sufficient descriptive calls, including physical boundaries, to properly identify and locate the land comprising the school district.

2. SCHOOLS AND SCHOOL DISTRICTS. *Bond election not invalid because of imperfect description in ballots of land in district.*

In an election held in a consolidated school district to determine whether bonds of the district shall be issued, it is unnecessary for the official ballots to contain a description of the land embraced in the district, and where the official ballots used at such election contained everything that the statute (chapter 207, section 2, Laws 1920; section 6662g, Hemingway's Code Supp. 1921) required should be printed thereon, the election was not rendered invalid by reason of the fact that these ballots had printed thereon an imperfect description of a part of the land embraced in the school district.

APPEAL from chancery court of Jones county.

HON. G. C. TANN, Chancellor.

Proceeding by the board of supervisors of Jones county in chancery court to validate bonds of a consolidated school district. From a decree validating the bonds, M. F. Welborn and others, objecting thereto, appeal. Affirmed.

*Bush, Boyd & Cooper,* for appellant.

I. The first question to be presented is the sufficiency of the notice as directed to be published and as published. Chapter 207 of the Laws of 1920, Hemingway's Supplement 662g, outlines the procedure to be followed in the issuance of bonds. This law provides that the board shall, by an order placed upon its minutes, declare its intention of issuing the bonds and shall therein fix a date for the holding of an election. Whereupon the election commissioners shall give not less than three weeks' notice of such election 'by publication of a notice thereof,' that the notice

of the election is an essential requirement.   This is a special election and one not prescribed by law as to time and place." In Vol. 20 of Corpus Juris at page 96 it is said:

"It is essential to the validity of an election that the electors have notice thereof in some form, either actual or constructive, such as notice in fact or by proclamation, or by statutes of which they are bound to take notice."

This is particularly true of an election not general but special where there is no statute fixing the time and the place and where the subject-matter of the election is one arising only once and not necessarily at all. In a case of the character before the court, what is the purpose of the notice? Is it simply to convey to the public the information that an election will be had on a certain day and at a certain place on a certain matter? While these are among the objects, we submit that there are other objects. The information is to be conveyed to qualified electors and it is the function of a notice of this kind to contain such information as to advise the public what qualified electors have a right to express their will at the election.

So when the notice is given that an election to issue the bonds of that district is to be had, it is right, it is proper and it is required that not only shall the time and the place of the election be given but the notice should contain information from which the electors of the county may determine whether they have the right to participate in that election. Is it not just as essential that a person know whether he or she may vote at all as it is to give the time and the place the vote may be cast? We submit that it is.

The appellee in the present case has practically admitted the propriety and necessity of incorporating in the notice a description of the lands included within the district. This indicates most convincingly that appellee realizes the propriety at least of advising the location of the land from which the qualified electors to determine the election shall be drawn. They attempted to set out by specific land description the component sections. This in-

dicates that the appellee knew that as a practical matter the area of a district such as a consolidated school district was not known and especially one, such as the one involved in the case at bar, organized a month or two prior to the election held. No taxes had been paid and there had been no assessment for taxes. Nothing had been done so far as the record shows to bring to the knowledge of those who were qualified voters of the Shady Grove consolidated school district the fact that they were such voters. The appellee conceived it to be its duty to advise them and did endeavor to do so in the notice. But in doing so they placed four sections of land in the description not in it and omitted four sections which should have been included.

But there is still another feature on this phase of the case that renders the notice in question a vicious one. All that we have had to say with reference to the usual lack of information as to the boundaries of the district and the territory included therein is particularly applicable. Conceding for argument's sake that there was no necessity of setting out in the notice the area constituting the district, still appellee directed, and the commissioners followed the direction, that a description of the area included be set out in the notice. And in setting out the area the mistakes occurred. Certainly this was misleading to those who resided in the sections whose descriptions were incorrect. The information contained in the notice was incorrect and confessedly so.

But the object of the notice is to get them out to vote and at a certain time and place this right may be exercised. We most earnestly insist that a notice which misleads renders an election thereon void. It is a serious irregularity. It is more serious than stating in an ambiguous way the place of the election for in that instance the fact that an election will be held is known to the voter and he will most likely clear up the ambiguity. Yet in the case of *People* v. *Caruthersville Sch. District*, 36 Pac. 396, 102 Cal. 184, an election was declared void for such an error in the notice.

In the case of *Barrett* v. *Cedar Hill District,* 85 So. 125, this court sitting *in banc* said: "The general rule is that the time and place are two essentials to be regarded in holding elections. These are fundamental, while other regulations may be treated as irregularities, which will not defeat the election where it affirmatively appears that no harm was done."

The last clause in the above-quoted excerpt placed the burden upon the appellee to show that no harm was done by this misleading information. None appears in the record. For the court to assume that no harm was done is unthinkable in view of the territory included.

We submit, therefore, that because of the errors in the notice of election that the election was void and the bonds consequently invalid. We are sure that these errors escaped the notice of the learned state's bond attorney for it would be impossible for him to check the details of description in the many matters coming to him for attention.

II. But coming to the ballot. The court will note that, in the ballot used, the number of the township in which the first four sections are situate is entirely omitted. They are described as sections 6, 7, 18 and 19 of range 11 west, Jones county, Miss. They could be in townships 8, 9 or 10 and still be within the second district of Jones county, Miss., as the attached plat clearly shows.

The voters who voted for the bonds expressed their assent to the issuance of bonds on the description thus furnished. The appellee following the election thereupon fixed a lien to secure the payment of the bonds not upon the void description thus given but upon sections 6, 7, 18 and 19, of township 9. These descriptions may be copied correctly in ballots just as they are in deeds and the courts insist upon the correctness of descriptions in deeds even to the extent of depriving one of his property. If errors be allowed in this particular and that particular *ad libitum* there is no extent to which officials may not go, except that arbitrary limit that this court or a lower court may fix. It is very true that the description is void. As to

what process the mind of the average voter followed in expressing his assent or dissent we do not attempt to say. We do say that where one in private transactions assents to the sale of land thus described and conveys accordingly that no title would thereby be conveyed. If a trustee in a deed of trust were to advertise land described as the four sections above, and then convey them to the purchaser correctly. described, little value would be attached to the deed.

We submit that, for the errors indicated in the foregoing, this cause should be reversed, the bonds declared invalid and a decree entered here accordingly.

*W. J. Pack* and *G. W. Hosey,* for appellees.

There are but two points of law urged upon the court by the appellants as to why said bonds are invalid.

I. That the notice published by the election commissioners is insufficient because a part of the land embraced in said territory is erroneously described.
We answer this contention, first, by saying that the said notice, as directed to be published and as published, contains every fundamental requirement of the statute. See section 6662g, Hemingway's Supplement, chapter 207 of the Laws of 1920. It will be noted that this section of the law stipulates just what shall be embraced in said resolution.

"Before issuing said bonds, the board of supervisors shall, by resolution, spread upon its minutes, declare its intention of issuing said bonds, fixing the maximum amount thereof, and the purpose for which they are to be issued, and fix in said resolution the date upon which an election shall be held in said county or consolidated school district."

An examination of the order of the resolution of the board in this case shows that every one of these requirements was met. In the same section, supra, it is provided that after the passage of said resolution, "the county election commissioners shall give not less than three weeks

notice of such election by publication of a notice thereof in a newspaper published in the county once a week for three weeks, preceding the same."

When the board of supervisors and the election commissioners attempted to embrace in said notice, a description of the land included in said consolidated school district, they did something that the statute did not require. It was mere surplusage, and irregularity that could not in any way affect the validity of the bonds. It was not such an irregularity as would mislead any voter or cause any harm to be done the Shady Grove consolidated public school district and the territory embraced therein was already legally established. This had been legally established and the boundaries fixed. This was done by the school board the only tribunal given authority under the law to create the same. When a majority of the qualified electors filed their petition with the board of supervisors, asking for said bond issue the board, while not necessary to do so, yet it had spread upon its minutes, and order again reciting what territory was embraced in said consolidated public school district.

If the board of supervisors, in directing the notice to be published, and if the election commissioners, in publishing said notice, had failed to include any land whatever in said notice or attempted to describe the territory embraced in said school district, no fault could be found in such acts, because the law does not require it. In *Barrett* v. *Cedar Hill Consolidated School District*, 85 So. 125, and on page 128, of the opinion, this court held, in speaking of the time and place for the election, that they were essentials.

"These are fundamental, while other regulations may be treated as irregularities, which will not defeat the election where it affirmatively appears that no harm was done."

We disagree with counsel for appellants that the burden was on the appellee to show that no harm was done by the irregularity in the notice, if indeed, it could be called an irregularity. The objectors and appellants here, were the ones putting the validity in question, and, having attacked

the validity of the proceedings, the burden was on them to show the invalidity and if anybody was misled, to show in what respect.

Second. Appellants contend, however, that since the election commissioners, in publishing the notice and the board of supervisors in directing the notice to be published, undertook to describe the territory, it therefore became necessary to describe it accurately. While we do not concede this point yet we do contend that there was enough in the description to enable all parties interested, to ascertain what territory was referred to. If the court will examine the map of the Shady Grove consolidated public school district on page 24 of the record, it will observe that Tallahoma creek formed the western boundary of the said district and that Jasper county formed the northern boundary; that the northern boundary passes through sections 30, 25 and 26, leaving a portion only of said sections south of the line and in Jones county, and that Tallahoma creek traverses sections 26 and 35.

The said notice complained of undertook to describe this territory as section 36 and that part of section 25 lying south of the Jasper and Jones county line, and that part of sections 26 and 35 lying south of the Jasper and Jones county line and east of Tallahoma creek in township 10 north of range 11, west.

It is true, the number of the range mentioned here is erroneous. It should have been range 12, but we submit that the mention of the county line of Jones and Jasper and the mention of Tallahoma creek and that part of those sections lying south and east of said physical boundaries, sufficiently identified and located said land, even though no township or range had been mentioned. It was the territory in the Shady Grove consolidated public school district that was referred to. All the territory in the said school district had been identified, located and fixed by the school board and there were no other fractional sections bearing these numbers south of the Jasper county line and east of the Tallahoma creek.

Certainly the same rule of construction in dealing with descriptions and deeds should control.  If we apply this rule of construction, then this description would be sufficient to locate the land in a deed independent of the error with reference to the range number. *Hazlip et al.* v. *Nolan,* 6 S. & M. 294; *Morrison* v. *Casey,* 82 Miss. 522; *Pegram* v. *Newman et al.,* 54 Miss. 612.

If this is the rule to be used in the construction of deeds where the description should be much more accurate than territory in a school district, then surely when the same rule is applied in the case at bar, it will be held that this territory was sufficiently identified.  We call the further attention of the court to the fact that the official ballot correctly described the above land and recited that it was township 10 north of range 12 west.

II.  Appellants next contend that the bonds are invalid because on the official ballot there was printed or intended to be printed, a correct description of the land in the school district but that there was an error in this description.  It will be noted that the official ballot, in describing the land in the territory, mentions: "Sections 6, 7, 18, and 19 . . . north of range 11 west," the number of the township being here omitted, but all the balance of the land in the district being correctly described.  We cannot see how this irregularity could possibly have misled anyone.  In the first place, it was not necessary to attempt to describe the territory in the district.  The official ballot contained everything that the statute required should be printed thereon, namely, "a brief statement of the amount, purpose of the proposed bond issue and the words: 'for the bond issue' and 'against the bond issue.'"

If it was for the purpose of giving notice to the voters that the election commissioners undertook to print the land description thereon, then the voters already had notice, because in the official notice of the election, published for three weeks, these identical section numbers, giving the correct township and range numbers, appeared.

We therefore respectfully submit that the chancellor committed no error in upholding the bond issue and that the case should be affirmed.

COOK, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Jones county validating certain bonds of the Shady Grove consolidated school district. The record discloses that the Shady Grove consolidated school district was legally established and created by the county school board, and that the territory included in the district is correctly described in the minutes of the school board. Some time after the creation of this school district a petition was filed with the board of supervisors containing a majority of the qualified electors of the said district, praying for the issuance of bonds for the purpose of providing funds for constructing and equipping a schoolhouse and teacher's home, and purchasing land upon which to erect this schoolhouse and teacher's home. After the filing of this petition the board of supervisors adopted and spread upon its minutes the necessary resolution, reciting the fact of the filing of the petition, and adjudicating that the said school district had been legally organized by the county school board, and correctly describing the territory embraced in the school district. This resolution also adjudged, among other things, that the petition for the issuance of the bonds contained a majority of the qualified electors of the district, and that the proposed issue of bonds had been approved by the county school board, and that it did not exceed fifteen per cent. of the total assessed valuation of the taxable property of the district, and ordered that an election be held in the school district at a fixed time and place to determine whether said bonds should be issued. This resolution also directed that the election commissioners of Jones county should publish a notice of such election, and provided a form for this notice and for the official ballot to be used at this election. Thereafter the election com-

missioners prepared and had published notice of this election, and also had printed official ballots for use at the election, and attempted to include in the notice and on the ballots a description of the lands embraced in said school district. In pursuance of this notice the election was held, and a large majority of those voting at the election voted in favor of the issuance of the bonds. When the result of this election was certified to the board of supervisors, the necessary orders for the issuance of the bonds were entered, and a complete transcript of the record was submitted to and approved by the state bond attorney. Thereafter proper notice was given to the chancellor that the transcript of the record had been filed and docketed in the office of the chancery clerk, and when the matter came on for hearing before the chancellor appellants appeared and filed their written objections to the validation of the bonds.

The objections of appellants were based upon the fact that the territory embraced in the school district was erroneously described in the notice of the election and also on the official ballots. In the notice of the election that part of the territory embraced in the district which is described as "section 36 and that part of section 25 lying south of the Jasper and Jones county line, and that part of sections 26 and 35 lying south of the Jasper and Jones county line and east of Tallahoma creek, township 10 north of range 12 west, Second district of Jones county, Mississippi," was erroneously described as being in range 11 west, instead of range 12 west, while on the official ballots the township number was omitted from the description of the part of the district described as "sections 6, 7, 18 and 19, township 9 north of range 11 west."

Conceding for the purpose of argument only that it was necessary to include in the notice calling the election a description of the land embraced in the school district, we do not think the error in this description was such as would mislead any interested voter, or render the notice insufficient and the election void. The lands embraced in

the school district were correctly located and described in the order of the school board creating the district, and an inspection of a map of the district, which is in evidence, shows that the line. dividing Jasper and Jones counties formed the northern boundary of the district, and that the northern boundary passes through sections 30, 25, and 26 in township 10 north, range 12 west, leaving only a portion of these sections south of this line and in Jones county, while Tallahoma creek, which forms the western boundary of the district, traverses sections 26 and 35 of said township and range, leaving only a portion of these sections east of this creek. In the election notice the parts of these several sections which are embraced in the school district are described as "that part of said sections which lie south of the Jasper county line and east of Tallahoma creek," and no part of the corresponding sections in range 11 west touches either the Jasper county line or Tallahoma creek, and there are no other fractional sections south of the Jasper county line and east of Tallahoma creek which bear these numbers, except those in range 12 west, which are embraced in the school district. This notice must be considered in its' entirety and when all the descriptive calls, including the physical boundaries mentioned therein, are read and considered together, the lands embraced in the school district are sufficiently identified and located, and no voter residing in the district could have been misled by the error.

What we have said in regard to the error in the notice of the election applies also to the error in the official. ballots. These ballots contained everything that the statute (chapter 207, Laws of 1920) required should be printed thereon, and it was entirely unnecessary for them to contain a description of the lands comprising the district. The electors of the district having appeared at the voting place in response to a sufficient notice of the election, no harm could have resulted from the fact that the ballots furnished them contained an insufficient description of a portion of the land embraced in the school district.

The decree of the court below will therefore be affirmed.

*Affirmed.*